[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Petitioner has brought this habeas corpus petition claiming ineffective assistance of counsel in violation of his Sixth Amendment rights. As of October 1, 1995, the Petitioner was represented by Martin Zeldis (hereinafter also "Zeldis") a public defender who was chosen to represent the Petitioner in the criminal case against him. Zeldis came into the case on or about October 1, 1995 representing Petitioner. The State claimed that the Petitioner and a companion each fired a gun at individuals located in front of 55 Franldin Avenue, Hartford, Connecticut. Javier Mateo was killed as a result of the shootings, and three other individuals were wounded by the bullets from these guns. The Petitioner gave a statement to the Hartford police on or about October 1, 1995, Respondent's Exhibit A, in which he denied he had fired either gun although he admitted that he knew what was going to happen. He also admitted that he obtained a gun, Desert Eagle 9mm with sixteen shots. His companion had a .380 caliber chrome handgun. Petitioner claims that his companion left without him on a bicycle and that he had given the 9mm gun to companion's brother who, according to the Petitioner, joined the Petitioner and others at the Manhattan building on Wethersfield Avenue and claimed that they were not at the scene of the shootings. However, the police did find four expended 9mm-shell casings at the scene. The Petitioner was charged with murder, conspiracy to commit murder, three counts of assault in the first degree and violation of probation. CT Page 16164
The Court bases much of its decision on the credibility of the witnesses who testified on November 8, 2000 at the habeas hearing. The witnesses were the Petitioner and Attorney Zeldis. The Court evaluated the credibility of the witnesses based upon their demeanor on the witness stand, the consistency or inconsistency of their testimony and the inconsistency of such testimony with other witnesses and exhibits, the ability to recall events, as well as the interest the witness has in the outcome of the case. The Court found Attorney Zeldis more credible than the Petitioner in part because of the Petitioner's inability to remember things clearly. The Court finds as follows:
1. Petitioner was born on June 30, 1978 and was between the ages of seventeen and nineteen when the shootings occurred.
2. On November 21, 1995, the Court, Koletsky J., after a hearing found probable cause that a murder occurred on September 29, 1995 and that the Petitioner had probably committed the crime.
3. On November 6, 1997, the Petitioner entered pleas of guilty under the Alford Doctrine to murder, conspiracy to commit murder and violation of probation.
4. On November 21, 1997, the Petitioner was sentenced, as part of a plea bargain, to thirty-one years of incarceration.
5. When the Petitioner pleaded guilty, seven jurors had already been selected for his trial.
6. The Petitioner is in the custody of the Respondent.
7. Attorney Zeldis met with the Petitioner prior to the probable cause hearing.
8. Attorney Zeldis is a highly competent attorney. He was graduated from Syracuse University and the Albany Law School, worked as a Public Defender in the Appellate Division of the Chief Public Defender's Office from 1984 to 1989. He has tried six murder cases to a verdict, he has resolved twenty-two other murder cases and he has represented thousands of indigent defendants.
9. Attorney Zeldis discussed the case with the Petitioner and prepared for the probable cause hearing and estimated that he spent 40-45 hours investigating and preparing the case. He went ahead with the probable cause hearing after some investigation and used the probable cause hearing as a means of obtaining discovery from the State. CT Page 16165
10. The first offer from the State was forty years imprisonment which both Attorney Zeldis and the Petitioner rejected. The second offer was thirty-five years imprisonment which the Petitioner rejected, and just before trial a final offer of twenty-nine years was made which the Petitioner rejected.
11. On September 5, 1996, Attorney Zeldis filed the following motions:
 a. Motion to Suppress all statements made by witnesses and the petitioner, including the statement of October 1, 1995 given by the Petitioner;
b. Motion to Suppress Identification;
c. Motion to Suppress Evidence;
d. Motion for Bill of Particulars;
 e. Motion in Limine to the Petitioner's prior criminal record and his prior incarceration;
f. Motion to Preserve Evidence;
g. Motion for Discovery and Inspection;
h. Motion for Sequestration of Witnesses;
i. Defendant's Notice of Alibi;
 j. Defendant's Motion in Limine to exclude prior convictions and/or prior bad acts; and
 k. Motion to Require Notice of Uncharged Misconduct Evidence.
12. Additionally, the State's Attorneys Office had an "open file" discovery availability, and Attorney Zeldis reviewed that file several times.
13. The State turned over statements of witnesses to Attorney Zeldis even though it was not required to do so.
14. Attorney Zeldis did review all of the evidence with the Petitioner.
15. The alibi witnesses were Michael Watts, brother of Chauncey Watts, CT Page 16166 the other alleged killer, and Marsha Kayolde. Attorney Zeldis concluded that Michael Watts' first loyalty was to his brother and that what he had to say would be inconsistent with the Petitioner's statement to the police. He further found after talking to Marsha Kayolde that her recollections were poor, and she said essentially what Michael said.
16. Attorney Zeldis considered the Petitioner's Statement of October 1, 1995 to be self-serving and believed that it would not help him. Therefore, he did plan to proceed to argue the motion to suppress once the jury had been selected.
17. The Court has reviewed the probable cause hearing and the testimony of witnesses presented by the State, namely, Arlene Reyes, who positively identified the Petitioner and identified Chauncey Watts as being in the area of the shootings. She positively identified them as shooting the guns. She testified that the Petitioner and Chauncey Watts were pointing and shooting the guns at her and her girlfriends; Darlene Cardona testified that she was in the area where the shots were fired, and although she did not see the shots fired, she saw Chauncey and the Petitioner leave shortly thereafter on their bikes and ride right by her within twenty seconds after the shots were fired. In reviewing the transcript of the probable cause hearing the Court finds that these witnesses would have been very damaging to the Petitioner.
18. According to the transcript regarding the guilty plea, Respondent's Exhibit B, the State's Attorney advised that a third female was sure that the two people involved were the Petitioner and Chauncey Watts. The State's Attorney also indicated that he had talked to another victim the morning of the plea canvass and guilty plea, and this victim positively identified Petitioner and Chauncey Watts being on the bikes and doing the shooting. Further, according to the State's Attorney, a fourth female was approximately one street over and immediately following the shooting she saw the Petitioner and Mr. Watts drive down the street on bicycles and positively identified them.
19. Although Attorney Zeldis stated that the State's witnesses were really not that effective and he thought that he could impeach them, he was still concerned that there were at least three eyewitnesses who knew the Petitioner. Although he thought that there was a significant chance of impeaching these witnesses, he didn't think it was significant enough to urge the Petitioner to go to trial.
20. Attorney Zeldis believed, and the Court agrees, that if the CT Page 16167 Petitioner had gone to trial and been convicted of all of the charges, consecutively he faced more than one hundred years in prison. He found that there was a decent chance of winning the Motion to Suppress and a potential of impeaching the witnesses, but he didn't think that the Petitioner should go to trial because of the enormous exposure, but he was concerned that no one else was identified as being on the second bike so that the jury might well infer that it was the Petitioner.
21. The Court finds that Attorney Zeldis conferred with the Petitioner and explained the pros and cons of the case extensively. Further, the Petitioner had an opportunity to and did talk with Attorney Zeldis during the time they were selecting jurors.
22. Petitioner admitted on cross-examination in this Court that it was his decision to plead guilty.
23. Once jury selection began the twenty-nine years was no longer being offered. Attorney Zeldis did not advise the Petitioner as to what he should do but did explain the situation to him. The Petitioner replied: "I'd like to settle for twenty-nine years but see what you can do." Attorney Zeldis went back to the Prosecution. The offer had been raised to thirty-one years, and the Petitioner decided to take it.
24. Attorney Zeldis said that the decision to plead guilty was the Petitioner's decision. He went over the plea canvass with him but did not tell him how to answer the questions.
25. The negotiations prior to the plea took most of one day.
26. Attorney Zeldis indicated that the witnesses for the State were not particularly good, but he thought he would have a difficult time impeaching all of them because there were so many.
27. The plea canvass was held after the guilty plea on November 6, 1997. The transcript is Respondent's Exhibit B which the Court has read and finds that the Petitioner answered Judge Clifford's questions knowingly and voluntarily, and, further, the Petitioner was well aware at the time of his plea that the plea bargain had been for thirty-one years which was the eventual sentence.
"For the Petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for counsel's mistakes, the result of the proceeding would have been CT Page 16168 different." Strickland v. Washington, 466 U.S. 668, 694 (1984); Johnsonv. Commissioner of Corrections, 58 Conn. App. 482, 484, (June 27, 2000).
This Court concludes that the Petitioner has failed to satisfy his burden of proving that counsel's performance was below the standard of criminal defense attorneys in the area. Further, based upon the evidence presented at the habeas trial and the exhibits submitted, if the Petitioner had gone to trial, he probably would have been convicted and sentenced to much more than thirty-one years. Therefore, there is no reasonable probability that the result of the proceeding would have been different. been convicted and sentenced to much more than thirty-one years. Therefore, there is no reasonable probability that the result of the proceeding would have been different. Under all the circumstances, Attorney Zeldis did a good job in working out a plea agreement of thirty-one years.[1]
The Petition for habeas corpus is denied.
Rittenband, JTR